**Brian L. BROWN, pro se., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 06–450C.**

United States Court of Federal Claims.

Dec. 15, 2006.

to reach this issue.

---

Brian L. Brown, Beaumont, TX, plaintiff, pro se.

Michael N. O'Connoll, Jr., Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant.

## MEMORANDUM ORDER AND OPINION

CHRISTINE O.C. MILLER, Judge.

This case is before the court after briefing on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).[1] Plaintiff has alleged that an agent of the Bureau of Prisons lost plaintiff's personal property while plaintiff was an inmate in a United States Penitentiary. Defendant asserts that plaintiff's claims are not subject to the jurisdiction of the United

States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000).

## FACTS

Brian L. Brown ("plaintiff") is an inmate incarcerated at a United States Penitentiary in Pollock, Louisiana. Plaintiff's complaint under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80 (2000) (the "FTCA"), alleges the loss of personal property on two separate occasions, in the amount of $171.90 and $87.15, respectively.

Plaintiff's first loss of property allegedly occurred on December 20, 2004, when $171.90 of property was not returned to him following a transfer from a Kansas penitentiary to a Colorado penitentiary. Plaintiff alleges that the Bureau of Prisons officers negligently handled his property during the transfer, causing the loss of several items of property, including a radio, headphones, batteries, and other items. Following a series of inquiries to prison officials, some items of plaintiff's property were returned, although other items remained missing. Plaintiff on March 14, 2005, filed a Tort Claim Action (# TRT–NCR2005–02170) alleging a loss of personal property. The Bureau of Prisons denied the claim on November 17, 2005, finding that "[i]nvestigation of your claim did not reveal you suffered any property loss as a result of the negligent acts or omissions of Bureau of Prisons employees. . . ."

The second loss allegedly occurred between June 10, 2005, and June 22, 2005. A Bureau of Prisons officer is alleged to have caused the loss of $87.15 of plaintiff's personal belongings by giving other inmates access to a locked locker containing plaintiff's property. Plaintiff filed a Tort Claim Action (# TRT–NCR–2005–03909) for the second loss on July 19, 2005, which the Bureau of Prisons denied on April 5, 2006. Following denial of his administrative claims, plaintiff filed this complaint on June 5, 2006, alleging negligent storing, packaging, and mailing of plaintiff's property. Defendant argues that plaintiff's claims are not subject to the court's jurisdiction and moves for dismissal pursuant to RCFC 12(b)(1).

---

1. Briefing has been protracted due to a series of delays encountered on separate occasions by both plaintiff and defendant in receiving service of documents filed with the court.

## DISCUSSION

### 1. *Pro se* standards

Complaints filed by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). A court should be "receptive to *pro se* plaintiffs and assist them." *Demes v. United States,* 52 Fed.Cl. 365, 369 (2002); see *Ruderer v. United States,* 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969).

*Pro se* litigants are granted the greatest latitude regarding motions to dismiss for failure to state a claim upon which relief can be granted. Courts have "strained [their] proper role in adversary proceedings to the limit, searching [the record] to see if plaintiff has a cause of action somewhere displayed." *Ruderer,* 412 F.2d at 1292. Nevertheless, while "[t]he fact that [a plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be." *Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir.1995). Although plaintiff is given some leniency in presenting his case, his *pro se* status does not render him immune from pleading facts upon which a valid claim can rest. See, e.g., *Ledford v. United States,* 297 F.3d 1378, 1382 (Fed.Cir.2002) (affirming dismissal of *pro se* plaintiff's complaint which sought, inter alia, a tax refund); *Constant v. United States,* 929 F.2d 654, 658 (Fed.Cir.1991) (sanctioning *pro se* plaintiff for filing frivolous appeal). As this court stated in Demes "[w]hile a court should be receptive to pro se plaintiffs and assist them, justice is ill-served when a jurist crosses the line from a finder of fact to advocate." 52 Fed.Cl. at 369.

### 2. Standard of review

■ Defendant moves to dismiss plaintiff's complaint under RCFC 12(b)(1) for lack of subject matter jurisdiction. When a federal court hears such a jurisdictional challenge, "its task is necessarily a limited one." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* The court must accept as true the facts alleged in the complaint, and must construe such facts in the light most favorable to the pleader. See *Henke,* 60 F.3d at 797 (holding that courts are obligated "to draw all reasonable inferences in plaintiff's favor"); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). Nevertheless, if the jurisdictional facts alleged in the complaint are disputed, "the ... court may consider relevant evidence in order to resolve the factual dispute." *Reynolds,* 846 F.2d at 747; *Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999) (holding that "[f]act-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint ... are challenged"). Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction. [The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds,* 846 F.2d at 748; *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) (holding that "[i]f [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof").

The Tucker Act defines the jurisdictional reach of the Court of Federal Claims. See 28 U.S.C. § 1491(a)(1). It "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and ... waives the Government's sovereign immunity for those actions." *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc); see also *Emery Worldwide Airlines, Inc. v. United States,* 49 Fed.Cl. 211, 220 (2001) (finding United States Postal Service to be "federal agency" within meaning of Administrative Disputes Resolution Act, and, thus, jurisdiction over it exists under Tucker Act), *aff'd,* 264 F.3d 1071, 1080 (Fed.Cir.2001).

The Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); see

also *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1324–25 (Fed.Cir.1997) ("Jurisdiction based on contract 'extends only to contracts either express or implied in fact, and not to claims on contracts implied in law.'" (quoting *Hercules, Inc. v. United States,* 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996))).

In Fisher the United States Court of Appeals for the Federal Circuit sought to clarify Tucker Act jurisprudence, which had blended the questions of the Court of Federal Claims's jurisdictional grant with the merits of the claim. "This mixture has been a source of confusion for litigants and a struggle for courts." 402 F.3d at 1172. As the Federal Circuit elucidated, the Tucker Act does not provide any substantive causes of action. "[I]n order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Id.;* see also *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

The Federal Circuit adopted a single-step approach to addressing whether a constitutional provision, statute, or regulation is money-mandating and, therefore, within the jurisdiction of the Court of Federal Claims.

> When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, ... the trial court at the outset shall determine, either in response to a motion by the Government or *sua sponte[,]* ... whether the Constitutional provision, statute, or regulation is one that is money-mandating.
>
> If the court's conclusion is that the Constitutional provision, statute, or regulation

meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course. ...

> If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act.

*Fisher,* 402 F.3d at 1173.

Plaintiff alleges loss of personal property while in the custody and care of the Bureau of Prisons and its agents, claims which sound in tort. The Tucker Act, 28 U.S.C. § 1491(a), specifically excludes tort claims from the jurisdiction of the Court of Federal Claims. *Id.* ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claims ... for liquidated or unliquidated damages in *cases not sounding in tort.*" (emphasis added)); see *Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997) (stating that Court of Federal Claims "lacks jurisdiction over tort claims against the United States").

Plaintiff asserts jurisdiction under the FTCA, 28 U.S.C. § 1346.[2] Contrary to plaintiff's understanding, the FTCA grants exclusive jurisdiction to the United States federal district courts regarding tort claims against the United States Government. See 28 U.S.C. § 1346(b)(1).[3] Plaintiff has not alleged facts sufficient to establish subject matter jurisdiction over the two claims described and cannot ground his claims on a money-mandating statute, constitutional provision, or regulation.[4]

---

**2.** Plaintiff also has cited to 28 U.S.C. §§ 2671, 2680 (2000), as sources for jurisdiction over his claims. These statutes address procedural aspects of claims under the FTCA and offer no additional support for plaintiff's jurisdictional arguments.

**3.** Section 1346(b)(1) provides:

[T]he district courts ... shall have *exclusive jurisdiction* of civil actions on claims against the United States, for money damages ..., for injury or *loss of property,* or personal injury or death caused by the negligent or wrongful act

or omission of any employee of the Government while acting within the scope of his office or employment. ...
*Id.* (emphasis added).

**4.** Plaintiff does cite to several cases and statutes that are not relevant to establishing jurisdiction for resolving the issues that he raises. Plaintiff asks for an order directing the delivery of mail sent to plaintiff to be opened only in his presence and charges misconduct and mishandling by the Bureau of Prisons of documents sent to him regarding the instant claims. These allegations have no bearing on the jurisdictional issues that

Although the Court of Federal Claims lacks jurisdiction to consider plaintiff's claims of property loss under the FTCA, the court is permitted to consider transfer of plaintiff's claims to a court of general jurisdiction. See *Tex. Peanut Farmers v. United States,* 409 F.3d 1370, 1374–75 (Fed.Cir.2005) (holding that Court of Federal Claims should have considered transfer of case following determination of lack of jurisdiction). 28 U.S.C. § 1631(2000) provides:

Whenever a civil action is filed ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed....

■ Although parties may request a transfer, the court is permitted to "order[ ] the transfer without being asked to do so by either party." *Tex. Peanut Farmers,* 409 F.3d at 1375. Transfer is appropriate when three elements are met: (1) The transferring court lacks subject matter jurisdiction; (2) the case could have been filed in the court receiving the transfer; and (3) the transfer is in the interests of justice. 28 U.S.C. § 1631.

■ Plaintiff has met the appropriate first element because the FTCA confers exclusive jurisdiction over his claims with the federal district courts. A dispute over the final denial of an administrative claim under the FTCA is subject to 28 C.F.R. § 14.9(a) (2006), which provides: "[N]otification of final denial ... shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification." *Id.* Plaintiff was instructed by letters dated November 17, 2005, and April 5, 2006, upon denial of his Tort Claim Action requests, to "file suit in an appropriate U.S. District Court no later than 6 months after the date of mailing of this notification."

Plaintiff filed his complaint with the Court of Federal Claims on June 5, 2006. Ordinarily, plaintiff's claim for $171.90 would fall outside of the six-month statute of limita-

tions, which would have expired on May 17, 2006. Nevertheless, plaintiff has asserted the mailbox rule set forth in *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), which holds that a *pro se* petitioner's notice of appeal of a denial of habeas relief is filed at moment of delivery to prison authorities for forwarding to the district court. *Id.* at 271, 108 S.Ct. 2379. In Houston, although "[t]he prison log, ... suggests that in addressing the notice the petitioner may have mistakenly used the post office box number of the Tennessee Supreme Court rather than that of the Federal District Court," the Court held that the date of filing with the district court was the date on which the prisoner provided the letter to prison authorities. *Id.* at 269, 108 S.Ct. 2379. As defendant notes, the mailbox rule has been extended by some courts to FTCA claims. E.g., *Garvey v. Vaughn,* 993 F.2d 776, 783 (11th Cir.1993) ("Therefore, we now hold that this circuit extends *Houston* to *pro se* prisoners filing complaints in section 1983 cases and claims under the Federal Tort Claims Act.").

Plaintiff contends that his complaint was filed by putting it "in the hands of the [prison counselor], to place [Indigent] Postage on [the] package, and then mail to the proper Court on the 15th date of May 2006." Pl.'s Br. filed Oct. 25, 2006, at 5. Examination of the prison log books shows that the Bureau of Prisons received several pieces of mail from plaintiff on May 15, 2006, concerning legal matters. The letters were addressed to (1) the United States District Court for the Central District of Kansas; (2) the United States Attorney's Office in Denver, Colorado; and (3) the United States District Court for the District of Colorado. While plaintiff did not address his letters to the Court of Federal Claims, the prison log book indicates that plaintiff addressed legal correspondence to federal district courts that could have jurisdiction over his claims. Thus, some evidence has been provided to demonstrate that plaintiff may have delivered letters regarding his FTCA claims on May 15, 2006. Since denials of plaintiff's administrative claims in the amounts of $171.90 and $87.15 were issued on

defendant has raised and do not cure any of the    deficiencies in the complaint discussed above.

November 17, 2005, and April 5, 2006, respectively, the delivery date under the mailbox rule would place both of plaintiff's claims within the six-month period. As this court lacks jurisdiction to review plaintiff's arguments further, the district court of appropriate jurisdiction must determine whether plaintiff has satisfied the requirements of the mailbox rule under Houston.

While plaintiff's complaint was filed over six months from the date of his last denial letter on November 17, 2005, and therefore could not have been filed in federal district court due to the expiration of the statutory period for initiating suit, invocation of the mailbox rule could place this claim within the six-month period. In addition, plaintiff has demonstrated that his remaining claim for $87.15 could have been filed in the district court in Colorado within the six-month period following his denial on May 15, 2006, since his claim was filed with the Court of Federal Claims on June 5, 2006.

Finally, the court is required to consider whether the transfer is in the interest of justice. Plaintiff has requested that the court "transfer [his claim] to [a] Court of Proper Jurisdiction," Pl.'s Br filed Oct. 25, 2006, at 6, and defendant has also made a similar request that the court "transfer his claim for $87.00 to an appropriate district court." Def.'s Br. filed Dec. 4, 2006, at 2. Because the parties have agreed to transfer one of plaintiff's claims, and plaintiff has demonstrated that notice of both his claims may have been filed within the applicable statute of limitations, the court finds that transfer is in the interest of justice.

## CONCLUSION

Accordingly, based on the foregoing, the Clerk of the Court is directed to transfer plaintiff's complaint to the United States District Court for the District of Colorado.

**IT IS SO ORDERED.**